UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB GRAY, ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WESCO AIRCRAFT HOLDINGS, INC., ) <br> RANDY J. SNYDER, TODD RENEHAN, ) <br> DAYNE A. BAIRD, THOMAS M. BANCROFT ) <br> III, PAUL E. FULCHINO, JAY L. ) <br> HABERLAND, SCOTT E. KUECHLE, ADAM ) <br> J. PALMER, ROBERT D. PAULSON, ) <br> JENNIFER M. POLLINO, and NORTON A. ) <br> SCHWARTZ, ) <br> ) <br>       Defendants. | Case No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Jacob Gray, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Wesco Aircraft Holdings, Inc. ("Wesco" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Wesco, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Wesco by Wolverine Intermediate Holding II Corporation ("Parent"), Wolverine Merger Corporation, a direct wholly owned subsidiary of Parent ("Merger Sub") (collectively "Wolverine") (the "Proposed Transaction"). Parent and Merger Sub are indirect subsidiaries of funds

1

managed and advised by Platinum Equity Advisors, LLC, a U.S.-based private equity firm ("Platinum").

2. On August 8, 2019, Wesco entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Parent will acquire Wesco, with Merger Sub merging with and into Wesco, and Wesco surviving as a wholly owned subsidiary of Parent (the "Merger").

3. Upon completion of the merger, Wesco shareholders will receive $11.05 in cash for each share of Wesco common stock held ("Merger Consideration").

4. On August 29, 2019, in order to convince Wesco public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) the valuation analyses performed by Wesco's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and J.P. Morgan Securities LLC ("J.P. Morgan") regarding the Proposed Transaction; and (iii) the nature of the work Morgan Stanley provided Platinum and its affiliates in the two years prior to the date of its fairness opinion for Wesco.

6. The special meeting of Wesco's stockholders to vote on the Proposed Transaction will be scheduled soon (the "Shareholder Vote") and the Proposed Transaction is set to close at the end of this calendar year. Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Wesco's stockholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff

seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Wesco's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Wesco's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, Wesco's proxy solicitor, Mackenzie Partners, Inc. is located in this District at 1407 Broadway, New York, NY 10018. Additionally,

Wesco held "fireside chats" with nine potentially interested parties and also held management presentations at the offices of Morgan Stanley located in this District at 1585 Broadway, New York, NY 10036.

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Wesco common stock.

12. Defendant Wesco is a public company incorporated under the laws of Delaware with principal executive offices located at 24911 Avenue Stanford, Valencia, CA 91355. Wesco's common stock is traded on the NYSE under the ticker symbol "WAIR."

13. Defendant Randy J. Snyder is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14. Defendant Todd Renehan is, and has been at all relevant times, a director of the Company and its Chief Executive Officer.

15. Defendant Dayne A. Baird is, and has been at all relevant times, a director of the Company.

16. Defendant Thomas M. Bancroft III is, and has been at all relevant times, a director of the Company.

17. Defendant Paul E. Fulchino is, and has been at all relevant times, a director of the Company.

18. Defendant Jay L. Haberland is, and has been at all relevant times, a director of the Company.

19. Defendant Scott E. Kuechle is, and has been at all relevant times, a director of the Company.

20. Defendant Adam J. Palmer is, and has been at all relevant times, a director of the

Company.

21. Defendant Robert D. Paulson is, and has been at all relevant times, a director of the Company.

22. Defendant Jennifer M. Pollino is, and has been at all relevant times, a director of the Company.

23. Defendant Norton A. Schwartz is, and has been at all relevant times, a director of the Company.

24. The defendants identified in paragraphs 13 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Wesco, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25. Wesco is a distributor and provider of supply chain management services to the global aerospace industry. The Company's products include Hardware, Chemicals, Electronic Components, Bearings and Other Products, while its services include Quality Assurance, Kitting and JIT Supply Chain Management. Wesco caters to commercial, military and general aviation sectors, including the original equipment manufacturers (OEMs) and their subcontractors, through which it supports various Western aircraft programs, and also sells products to airline-affiliated and independent maintenance, repair and overhaul (MRO) providers.

26. On August 8, 2019, the Board caused the Company to enter into the Merger Agreement with Wolverine.

27. Pursuant to the terms of the Merger Agreement, each share of Wesco common stock will be converted into the right to receive $11.05 in cash per share of Wesco common stock held.

28. According to the August 9, 2019, press release announcing the Proposed Transaction:

**Wesco Aircraft Enters into Definitive Merger
Agreement to be Acquired by Affiliate of Platinum Equity**

5

VALENCIA Calif., August 9, 2019 — Wesco Aircraft Holdings Inc. (NYSE: WAIR), one of the world's leading distributors and providers of comprehensive supply chain management services to the global aerospace industry, today announced that it has entered into a definitive merger agreement to be acquired by an affiliate of Platinum Equity in a transaction valued at approximately $1.9 billion.

Upon closing, Wesco will be combined with Platinum Equity portfolio company Pattonair, a provider of supply chain management services for the aerospace and defense industries based in the United Kingdom.

Under the agreement, which has been unanimously approved by Wesco's Board of Directors, Wesco shareholders would receive $11.05 per share in cash. The cash purchase price represents a premium of approximately 27.5 percent to the 90-day volume weighted average share price for the period ended May 24, 2019, the last trading day prior to media speculation regarding a potential transaction involving Wesco Aircraft.

Wesco's three largest shareholders, affiliates of The Carlyle Group and Makaira Partners, as well as the Snyder Family Trusts, support the transaction and have entered into voting and support agreements to vote their shares in favor of the transaction.

"We are excited about the opportunities a combination with Pattonair will provide Wesco. This is the right transaction for our shareholders, customers and employees," said Todd Renehan, Chief Executive Officer of Wesco Aircraft. "This transaction is a strong validation of our customer value proposition, and it will allow us to find new and innovative ways to bring more value to customers, enhance relationships with suppliers and create additional opportunities for employees."

Wayne Hollinshead, Pattonair CEO, said, "This is great news for our company and our customers and will create new avenues for growth and expansion. Wesco is an outstanding business with an impressive track record for innovation and customer service. We are excited about the prospects of working together."

Louis Samson, Platinum Equity Partner, said, "Wesco's broad customer base and industry-leading capabilities have positioned it well to benefit from long-term trends in the aerospace and defense industry. Bringing Wesco and Pattonair together will create a truly global enterprise, benefiting the combined customer base through increased scale and access to new technologies."

**Transaction Details**
The transaction will be financed through a combination of committed equity financing provided by affiliates of Platinum Equity Capital Partners IV,

> L.P., as well as debt financing that has been committed to by Bank of America Merrill Lynch.
>
> The transaction is expected to be completed by the end of calendar 2019 and is subject to Wesco shareholder approval, regulatory clearances and other customary closing conditions.
>
> Upon the completion of the transaction, Wesco will become a privately held company, and shares of its common stock no longer will be listed on any public market.
>
> **Advisors**
> Morgan Stanley & Co. LLC and J.P. Morgan Securities LLC are serving as financial advisors to Wesco, and Latham & Watkins LLP is providing legal counsel to Wesco. Hughes Hubbard & Reed LLP is providing M&A legal counsel to Pattonair, and Willkie Farr & Gallagher LLP is providing financing legal counsel to Pattonair.

**The Proxy Omits Material Information**

29. On August 29, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The special meeting of Wesco stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

30. In particular, the Proxy omits material information regarding: (i) the sales process leading up to the Proposed Transaction; (ii) Morgan Stanley and J.P. Morgan's financial analyses regarding the Proposed Transaction; and (iii) the nature of the work Morgan Stanley provided Platinum and its affiliates in the two years prior to rendering its fairness opinion for Wesco.

31. First, the Proxy states that Wesco entered into confidentiality agreements containing customary standstill provisions with 14 potentially interested parties. Proxy at 41. However, the Proxy fails to disclose whether such standstill provisions contained a "don't ask don't

waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or still remain in effect. Failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed a confidentiality agreement could have made a superior proposal. **But that is not true.** If those confidentiality agreements contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the references to the confidentiality agreements in the Proxy materially incomplete; and therefore, misleading as any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

32.     Second, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by Wesco's financial advisors, Morgan Stanley and J.P. Morgan regarding the Proposed Transaction.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy omits the terminal values of the Company. In addition, the Proxy fails to disclose the inputs and assumptions underlying the perpetual growth rate of 1.0% to 2.0%. *Id.* at 69.

34.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose the inputs and assumptions underlying the selection of the perpetual growth rate of 1.5%. *Id.* at 59. Further, the Proxy fails to disclose the number of outstanding shares of Wesco common stock on a fully diluted basis as of July 27, 2019, and the terminal values for the Company. *Id.*

35.     These key inputs are material to Wesco shareholders, and their omission renders the summary of Morgan Stanley and J.P. Morgan's *Discounted Cash Flow Analysis* incomplete and

misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Wesco's shareholders cannot evaluate for themselves the reliability of Morgan Stanley and J.P. Morgan's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Morgan Stanley and J.P. Morgan, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

36. With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis, the Proxy fails to disclose the one-year forward price targets for Wesco prepared and published by equity research analysts. Proxy at 62.

37. Third, in its fairness opinion, Morgan Stanley fails to disclose the nature of the work it provided Platinum and its affiliates in the two years prior to rendering its fairness opinion for Wesco. *Id.* at 64.

9

38. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

39. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the sales process leading up to the Proposed Transaction; (ii) the valuation analyses performed by Wesco's financial advisors, Morgan Stanley and J.P. Morgan regarding the Proposed Transaction; and (iii) the nature of the work Morgan Stanley provided Platinum and its affiliates in the two years prior to rendering its fairness opinion for Wesco.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley and J.P. Morgan reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by both Morgan Stanley and J.P. Morgan, as well as the fairness opinions

and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Morgan Stanley and J.P. Morgan's analyses in connection with their receipt of the fairness opinions, question Morgan Stanley and J.P. Morgan as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

48. Wesco is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and

irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Wesco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Wesco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The

Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 13, 2019               **MONTEVERDE & ASSOCIATES PC**

   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*